

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOs. PD-0581-22 & PD-0582-22

### BEECHER MONTGOMERY, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS TARRANT COUNTY

Finley, J., filed a dissenting opinion.

## DISSENTING OPINION

Appellant pleaded guilty to evading arrest and theft and pleaded true to a prior felony conviction. The trial court deferred guilt and placed Appellant on ten years' deferred adjudication community supervision. The State later filed a motion to proceed with Appellant's adjudication. Appellant objected to proceeding with the

adjudication hearing via Zoom, arguing that the Zoom adjudication hearing would violate his Sixth Amendment right to confront witnesses. The trial court overruled his objections. At the Zoom hearing, the State called four witnesses. The trial court found the State's allegations true, adjudicated guilt, and sentenced Appellant to twenty years' confinement for each offense.

The question before the Court is whether Appellant enjoyed a Sixth Amendment right to confront witnesses when the trial court held a virtual hearing on the State's motion to adjudicate. The court of appeals below concluded that the "Confrontation Clause is inapplicable to a revocation proceeding." *Montgomery v. State*, No. 02-21-00002-CR, 2022 WL 5240472, at *6 (Tex. App.—Fort Worth Oct. 6, 2022) (mem. op., not designated for publication). We granted Appellant's petition for discretionary review to resolve a split of authority in the lower courts of this State.

"The Confrontation Clause of the Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . .'" *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011) (quoting U.S. CONST. amend. VI). Barring some exceptions, the admission of testimonial, out-of-court statements from a non-testifying witness violates the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006); *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

In 1971, this Court held that "[a] probation revocation hearing is not an adversarial proceeding, a civil action, or a criminal prosecution[;] instead, it is administrative in nature, a means of protecting society and rehabilitating lawbreakers." *Hill v. State*, 480 S.W.2d 200, 202–03 (Tex. Crim. App. 1971) (op. on reh'g) (citations omitted). In 1972, in *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court of the United States held that the revocation of parole in the federal sphere is not a stage in a criminal prosecution, reasoning that "[p]arole arises after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480. The next year, in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court held that federal probation revocation, "like parole revocation, is not a stage of a criminal prosecution," emphasizing "that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Id.* at 782 & n.4 (citing Van Dyke, *Parole Revocation Hearings in California: The Right to Counsel*, 59 Calif. L. Rev. 1215, 1241–43 (1971)).

But the revocation of probation is noticeably different than a defendant's status on deferred adjudication. As we explained in *Middleton v. State*, 634 S.W.3d 46 (Tex. Crim. App. 2021):

> To be placed on deferred adjudication, a defendant pleads guilty, but the trial court does not make a finding of guilt; rather the trial court finds that the "evidence . . . substantiates the defendant's guilt [and] defers further proceedings without entering an adjudication of guilt." The wording of the statute seems to contemplate a pause, as if the case were taken under advisement. During this pause, the defendant is given the opportunity to complete a probationary period in compliance with conditions, and if he succeeds, then the charges will be dismissed. If he fails, and the trial judge later finds a violation of probation and decides to adjudicate guilt, the proceedings continue where they left off: "After an adjudication of guilt, all proceedings, including the assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred." For most purposes, a deferred adjudication does not count as a conviction.

*Id.* at 50 (internal footnotes omitted). No conviction—or sentence—is imposed in a deferred adjudication case. As we noted in *Middleton*, deferred adjudication simply serves as a "pause" in proceedings. 634 S.W.3d at 50. Charges are dismissed if deferred adjudication is successfully completed. *Id.*; *see also* TEX. CODE CRIM. PROC. art. 42A.111. Necessarily, hearings to adjudicate guilt are a continuation of the criminal proceedings that preceded them. Unless and until guilt is adjudicated and a sentence is imposed, a defendant continues to enjoy the full panoply of rights provided by the United States Constitution.

In any event, reliance on federal case law is misplaced.[1] This is not a federal case. This is Texas. The seminal Texas case on point is *Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012).[2] In *Doan*, the "issue [was] whether the doctrine of *res judicata* applie[d] to bar a prosecution for a criminal offense in one county after a prosecutor in another county unsuccessfully attempted to revoke the defendant's community supervision on the ground that he committed the same offense." *Id.* at 205–06.

Obviously, this is not a *res judicata* case. *Cf. ante* at 3 (KEEL, J., concurring) ("Moreover, *Ex parte Doan* is irrelevant. It says nothing about the applicability of the Confrontation Clause to adjudication hearings."). But *Doan*'s discussion of Texas revocation proceedings is important to today's case. This Court observed the following about *Hill*:

---

[1] Faithfully applying *Scarpelli*, every federal circuit court of appeals has held that the Sixth Amendment does not apply in hearings for the revocation of federal supervised release, probation, or parole. *See, e.g.*, *United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005); *United States v. Peguero*, 34 F.4th 143, 154 (2d Cir. 2022); *United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009); *United States v. Kissi*, 543 F. App'x 293, 295 (4th Cir. 2013); *United States v. Grandlund*, 71 F.3d 507, 510 (5th Cir. 1996); *United States v. Kirby*, 418 F.3d 621, 627–28 (6th Cir. 2005); *United States v. Perez*, 99 F.4th 972, 976 (7th Cir. 2024); *United States v. Ray*, 530 F.3d 666, 668 (8th Cir. 2008); *Valdivia v. Schwarzenegger*, 599 F.3d 984, 989 (9th Cir. 2010); *United States v. Williams*, 106 F.4th 1040, 1045 (10th Cir. 2024); *United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015); *Ash v. Reilly*, 431 F.3d 826, 829–30 (D.C. Cir. 2005).

[2] The Court does not address *Doan*, even while recognizing that "a hearing on the State's motion to enter adjudication of guilt and revoke community supervision differs from typical federal probation revocation proceedings." *Ante* at 7 (Court's Op.).

> We have stated more than once that revocation proceedings are "administrative in nature." We began using the label as a result of confusion about federal law, and we have expanded on that confusion over the years. Using the word "administrative" became a way of stating that defendants in revocation hearings do not enjoy the same panoply of procedural rights as defendants in criminal trials. This is true, as far as it goes, but our characterization of a judicial proceeding as an administrative proceeding is, on its face, inaccurate. Moreover, we have used the "administrative" label to imply that we would not strictly enforce procedural rules at revocation hearings, which was an injudicious and inaccurate implication.

*Id.* at 208 (internal footnote omitted). This Court compared Texas proceedings with the federal proceedings in *Scarpelli*. In *Scarpelli*, the Supreme Court of the United States observed that a federal probation-revocation hearing is unlike

> [a] criminal trial, [in which] the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights. . . . In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation [toward rehabilitation]; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole.

411 U.S. at 789. But in Texas, procedures are far different:

> [T]he State is represented by a prosecutor, the defendant does have a right to counsel, the hearing is before the judge, formal rules of evidence do apply, and there may be appeal directly to a court of appeals. They are conducted entirely within the judicial branch. The Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing. Indeed, aside from the burden of proof required to prove a community-supervision violation

(preponderance of the evidence, which is lower than the burden of proof beyond a reasonable doubt that is required to prove a new criminal offense), there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding.

*Doan*, 369 S.W.3d at 210 (internal footnotes omitted). Consequently, we concluded:

A Texas community-supervision revocation proceeding involves the application of law to past facts that remain static. It is conducted according to judicial rules before a trial judge, not an administrative agency. Applying administrative law—the law that governs the decision-making processes of administrative agencies—to revocation hearings has no basis in the Code of Criminal Procedure. *Community-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings.*

*Id.* at 212 (emphasis added).

JUDGE KEEL posits that the Confrontation Clause does not apply because "the respondent to the motion to adjudicate is not 'accused[.]'" *Ante* at 1–2 (KEEL, J., concurring). But contrary to JUDGE KEEL's assertion, a defendant placed on deferred adjudication remains "accused" because they are not yet convicted. Two months ago, this Court recognized in *State v. McDonald* that the Sixth Amendment right to counsel terminates upon the dismissal of a defendant's charges. — S.W.3d —, 2026 WL 1025753, at *6 (Tex. Crim. App. Apr. 16, 2026). This was so because the dismissal of charges terminates the "adversarial process." *Id.* at *4. But in the context of deferred adjudication probation, the "adversarial process" is not

terminated. The defendant is not yet convicted and the State most definitely remains "adversarial" to the defendant.

Nor does *Ex parte Zubiate* change the analysis. *See ante* at 2 (KEEL, J., concurring) (citing 710 S.W.3d 724, 726–27 (Tex. Crim. App. 2025)). *Zubiate* was a parole revocation case, a proceeding markedly different from deferred adjudication. Moreover, the Supreme Court of the United States has already foreclosed the applicability of the Confrontation Clause to parole revocation hearings. *Morrisey*, 408 U.S. at 480; *see also Zubiate*, 710 S.W.3d at 728 (NEWELL, J., concurring). As such, *Zubiate* is inapplicable to this case.

JUDGE KEEL also argues that because "[t]he evidence at an adjudication hearing is offered to assess the defendant's performance on probation and not to establish guilt for a charged offense, so the hearing is not a criminal trial, and the evidence is not offered 'against' the defendant in the ordinary sense of the Confrontation Clause." *Id.* at 2 (citing *Cruz v. New York*, 481 U.S. 186, 190 (1987)). But this is simply incorrect. Evidence at an adjudication hearing *is* offered to secure a conviction because the trial court *can*, should it find violations of community supervision, convict the defendant of the offense for which the defendant was placed on deferred adjudication. *See* TEX. CODE CRIM. PROC. arts. 42A.108(b), 42A.110.

Moreover, to the extent that JUDGE KEEL and JUDGE PARKER equate adjudication hearings—where the defendant has not yet been convicted—with "sentencing," this distinction affects other facets of the law. *See ante* at 2 (KEEL, J., concurring) ("[t]he defendant at an adjudication hearing is not 'accused' of the crime . . . [h]e lost the presumption of innocence when (1) he judicially confessed to it, and (2) the trial court found that the evidence substantiated his guilt. After that, his liberty is conditional."); *see also ante* at 4 (PARKER, J., concurring). Consider, for example, a defendant's right to cross-examine a witness about prior convictions. Under Texas Rule of Evidence 609(c), "when the probationary term has expired [or probation was satisfactorily completed] and the witness has not been subsequently convicted of a felony or crime involving moral turpitude, the prior conviction is not admissible for impeachment purposes." *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993) (citing TEX. R. EVID. 609(c)). But Rule of Evidence 609 does not permit—nor has this Court ever recognized—cross-examination of a witness's satisfactorily completed deferred adjudication probation. In fact, when it comes to deferred adjudication probation, a witness can only be cross-examined about their deferred adjudication status if the proponent can show a logical connection between the witness's testimony and the witness's probationary status. *Irby v. State*, 327 S.W.3d 138, 146, 154 (Tex. Crim. App. 2010). If indeed defendants

on deferred adjudication who are not yet adjudicated stand on the same footing as convicted defendants in revocation proceedings (or, as JUDGE PARKER argues, convicted defendants simply being sentenced), then it might follow that cross-examination for deferred status—past and present—is permissible. So long as the distinction on cross-examination between probation statuses remains the same, the solution to this implicit tension is to recognize that there is a distinction between deferred status in an adjudication hearing and revocation or sentencing: When a defendant is not yet convicted, as in the "pause" of deferred adjudication, the full panoply of constitutional rights applies.

One final point: In *Middleton*, this Court described deferred adjudication as a "pause" in proceedings. 634 S.W.3d at 50. If that is the case, when and where is the "play" button? The Court and my colleagues with concurring opinions certainly seem not to believe that the adjudication hearing is the "play" button. But once a defendant is adjudicated and sentenced, proceedings are over. It would seem as though the "pause," if the Court were to be right, was not a "pause" at all but rather a stop sign. But we know that premise cannot be true. Rather, the simple solution is to recognize that the State's motion to adjudicate serves as the "play" button, restarting adversarial proceedings that carry with them Confrontation Clause protections.

*Doan*'s mandate is clear: "Community-supervision revocation proceedings . . . are judicial proceedings, to be governed by the rules established to govern judicial proceedings." 369 S.W.3d at 212. And there is no meaningful distinction between the term "criminal prosecutions" as it appears in the Sixth Amendment, *see* U.S. CONST. amend. VI, and *Doan*'s use of the term "judicial proceedings," 369 S.W.3d at 212. For example, this Court has recognized that the Sixth Amendment right to counsel applies to adjudication hearings. *Parker v. State*, 545 S.W.2d 151, 155 (Tex. Crim. App. 1977). This was so because "revocation proceedings cannot be isolated from the context of the criminal process." *Id.* In fact, this Court in *Parker* cited to *Fariss v. Tipps*, 463 S.W.2d 176 (Tex. 1971), which held that revocation is a "criminal prosecution" within Article I, Section 10, of the Texas Constitution. 545 S.W.2d at 155 (first citing *Fariss*; then citing *Ex parte Williams*, 414 S.W.2d 472 (Tex. Crim. App. 1967)).

In sum, the Sixth Amendment's Confrontation Clause applies to deferred adjudication probation hearings for two reasons. First, deferred adjudication is unlike probation revocation because a sentence has not yet been imposed at the time of the adjudication hearing. *See Middleton*, 634 S.W.3d at 50. Second, as we explained in *Doan*, Texas "[c]ommunity-supervision revocation proceedings . . . are judicial proceedings, to be governed by the rules established to govern judicial proceedings."

369 S.W.3d at 212. I would reverse the judgment of the court of appeals and remand for consideration of the merits of Appellant's Confrontation Clause claim. I respectfully dissent.

**Filed: July 2, 2026**
**Publish**